ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| FRANCISCO BRAÑA RIVERA Y OTROS<br><br>Recurrido<br><br>v.<br><br>WILLIAM IRIZARRY LÓPEZ Y OTROS<br><br>Peticionarios | **KLCE202401138** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Cabo Roja<br><br>Civil Núm.:<br>CB2024CV00250<br><br>Sobre:<br>Desahucio |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico a 21 de noviembre de 2024.

Comparece ante este foro el Sr. William Irizarry López (señor Irizarry), su esposa y la sociedad legal de gananciales compuesta por ambos y RT International Roofer's, Inc., ("la parte peticionaria") y nos solicitan que revisemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Cabo Rojo, notificada el 17 de septiembre de 2024. Mediante esta, el foro primario declaró *No Ha Lugar* la *Dúplica a Moción en "Cumplimiento de Orden y en Réplica a Moción en Oposición de la parte demandante"*. En consecuencia, denegó convertir el procedimiento de desahucio en precario a uno ordinario.

Por los fundamentos que se exponen a continuación, **DENEGAMOS** el recurso de *certiorari* de epígrafe.

### I.

El 25 de abril de 2024, el Sr. Francisco Braña Rivera, la Sra. Madeline Colón Marín y la sociedad legal de gananciales compuesta por ambos ("la parte

recurrida") presentaron una *Demanda* sobre desahucio en precario en contra de la parte peticionaria. Alegaron que, eran de dueños de una parcela de terreno marcada con el número dos (2)[1], ubicada en el municipio de Cabo Rojo.[2] Además, arguyeron que, en el plano de inscripción aparecía una porción de terreno identificada como solar número once (11)[3] y una porción de terreno identificada como solar número doce (12)[4], las cuales no estaban segregadas de la parcela núm. 2. Enfatizaron que, la parte peticionaria ocupó las parcelas núm. 11 y núm. 12

---

[1] RUSTICA: Parcela de terreno marcada con el número 2, radicada en el Barrio Miradero, del término municipal de Cabo Rojo, Puerto Rico, con una cabida de 3.8916 cuerdas; equivalentes a 15,295.5175 metros cuadrados. En linderos; Norte, con terrenos de Pino Development Corporation; Sur, con la carretera estatal número 308; Este, con la parcela marcada con el número 3; Oeste, con la parcela marcada con el número 1. A dicha finca le segregaron los siguientes solares sin describir remanente: Solar 1 de 998.989 metros cuadrados (Finca número 28219), Solar 2 de 1000.33 metros cuadrados (Finca número 28220), Solar 8 de 1000.33 metros cuadrados (Finca número 28221), Solar 9 de 1000.33 netros cuadrados (Finca número 28222) y Uso Público de 2074.90 metros cuadrados (Finca úmero 28549). El plano y su resolución de ARPE se encuentra archivado en el Registro bajo I número 3526, aprobando los solares 1 al 12 y uso público.
- Con número de catastro: 308-000-006-52-000
-Dicha propiedad consta inscrita al Folio 102 vto, del Tomo 353 de Cabo Rojo, Finca número 12220, inscripción 5ta., Registro de la Propiedad, Sección de San Germán.
[2] *Demanda,* Anejo III, págs. 5-8 del apéndice del recurso.
[3] --RUSTICA: Porción de terreno identificado como solar número ONCE (11) según el Plano de Inscripción, del proyecto CAMINO DEL PUERTO, localizado en el Barrio Miradero del término municipal de Cabo Rojo, Puerto Rico, con una cabida de MIL PUNTO TREINTITRES METROS CUADRADOS (1,000.33 m/c), equivalentes a CERO PUNTO DOS MIL QUINIENTOS CUARENTA Y CINCO DIEZMILESIMAS DE CUERDAS (0.2545 cdas). Colindando por el NORTE, en TREINTA Y CINCO PUNTO CUARENTIUN METROS (35.41 m), con el solar identificado con el número DIEZ (10) del proyecto Camino del Puerto; por el Sur, en TREINTA Y CINCO PUNTO CUARENTIUN METROS (35.41 m), con el solar identificado con el número DOCE (12) del proyecto Camino del Puerto; por el Este, en VEINTIOCHO PUNTO VEINTICINCO METROS (28.25 m), con la parcela marcada con el número 3; y por el Oeste, en VEINTIOCHO PUNTO VEINTICINCO METROS (28.25 m), con Avenida Capitán. --Catastro número: 308-091-664-94-000.
[4] --RUSTICA: Porción de terreno identificado como solar número DOCE (12) según el Plano de Inscripción, del proyecto CAMINO DEL PUERTO, localizado en el Barrio Miradero del término municipal de Cabo Rojo, Puerto Rico, con una cabida de NOVECIENTOS NOVENTIOCHO PUNTO NOVECIENTOS OCHENTINUEVE METROS CUADRADOS (998.989 m/c), equivalentes a CERO PUNTO DOS MIL QUINIENTOS CUARENTA Y DOS DIEZMILESIMAS DE CUERDAS (0.2542 cdas). Colindando por el NORTE, en TREINTA Y CINCO PUNTO CUARENTIUN METROS (35.41 m), con el solar identificado con el número ONCE (11) del proyecto Camino del Puerto; por el Sur, en TREINTA PUNTO NOVENTIUN METROS (30.91 m), con la carretera estatal número TRESCIENTOS OCHO (308); por el Este, en VEINTIOCHO PUNTO VEINTICINCO METROS (28.25 m), con la parcela marcada con el número 3; y por el Oeste, en VEINTITRES PUNTO SETENTICINCO METROS (23.75 m), con Avenida Capitán. Sus colindancias Oeste y Sur se hallan unidas por una curva de CUATRO PUNTO CINCUENTA METROS (4.50) --Catastro número: 308-091-664-95-000.

sin permiso ni autorización de la parte recurrida. A su vez, esbozaron que, la parte peticionaria no pagaba por ocupar dichas propiedades. Por último, argumentaron que solicitaron a la parte peticionara que removiera los camiones, vehículos, vagones y caseta de galvaluú de las parcelas núm. 11 y núm. 12. Por todo lo anterior, solicitaron al foro primario que celebrara una vista, dictara sentencia ordenando el lanzamiento de la parte peticionara de las parcelas y, condenara al pago de gastos, costas y honorarios de abogado.

Así las cosas, el 21 de mayo de 2024, la parte peticionaria presentó su moción de *Sentencia Declaratoria*.[5] Mediante esta, adujo la parte recurrida no ofreció mantenimiento ni realizó actos de dominio en el lugar. Asimismo, aclaró que, ocupó la parcela núm. 12 desde el año 2021, construyó en esta con materiales propios y, realizó mejoras útiles sin oposición de la parte recurrida. Así pues, razonó que, previo a emitir un dictamen respecto al desahucio, debía determinarse si eran edificadores de buena o mala fe. Por tanto, solicitó que paralizara el proceso de desahucio y dictara sentencia declaratoria.

En la misma fecha, el foro primario celebró una vista. En la *Minuta* señaló, que las mejoras que había realizado la parte peticionaria no otorgaban el derecho de retención de las parcelas y, que las mejoras serían dilucidadas en un pleito aparte al caso de epígrafe.[6] De igual forma, determinó lo siguiente:

> Se concede hasta el 30 de mayo de 2024, al licenciado Ojeda para expresar particularmente cuáles fueron las mejoras que se hicieron a la propiedad y establecer cuáles

---

[5] *Sentencia Declaratoria*, Anejo IV, págs. 8-12 del apéndice del recurso.
[6] *Minuta*, Anejo V, págs. 13-14 del apéndice del recurso.

son los hechos y fundamentos para mover la discreción del tribunal a convertir este procedimiento de sumario a uno ordinario. Debe notificar del escrito al licenciado Fernández Domenech. Se le permite al licenciado Fernández presentar su posición por escrito o en sala.

Se señala Vista para el 30 de mayo de 2024, a las 2:00 de la tarde. En esa fecha se verá el caso o, se convertirá el proceso a uno ordinario o, podría señalarse una inspección ocular.

Conforme ordenado, el 28 de mayo de 2024, la parte peticionaria presentó su moción en *Cumplimiento de Orden*.[7] En esencia, indicó que había realizado actos de dominio durante los pasados veintiún (21) años y, que dichos actos constituyeron gastos necesarios, los cuales permitieron que la parcela se mantuviera en buen estado y aumentara su valor. Sostuvo que podía retener las parcelas hasta que la parte recurrida indemnizara los gastos en su totalidad. En virtud de lo anterior, razonó que procedía convertir el proceso de desahucio en uno ordinario para evaluar los gastos necesarios y útiles que se realizaron en las parcelas.

Posteriormente, el 22 de julio de 2024, el foro primario llevó a cabo una inspección ocular.[8] Particularmente, el foro primario dispuso lo siguiente:

I. Acta de Inspección Ocular debe ser notificada en o antes del 5 de agosto de 2024.

II. El licenciado Fernández deberá presentar escrito en o antes del 22 de agosto de 2024 referente a convertir el caso a uno ordinario.

III. El licenciado Ojeda tiene diez (10) días para replicar el escrito presentado por el licenciado Fernández.

IV. Vista de Estado de Procedimiento será para el 17 de septiembre de 2024 a las 11:00 am de forma presencial.

---

[7] *Cumplimiento de Orden*, Anejo VI, págs. 15-20 del apéndice del recurso.
[8] *Minuta-Orden Acta de Inspección Ocular*, Anejo VII, págs. 21-23.

V. Tribunal revisará escritos presentados y determinará por orden.

Así las cosas, el 3 de septiembre de 2024, la parte peticionaria presentó su moción en *Cumplimiento de Orden y en Réplica a Moción en Oposición de la Parte Demandante*.[9] Reiteró que, el foro primario tenía que convertir el proceso de desahucio en uno ordinario a los fines de resolver las controversias relacionadas a los gatos y mejoras en las parcelas. Sostuvo que procedía realizar un descubrimiento de prueba y presentar prueba documental, testifical y pericial para conocer el valor actual del predio de terreno, si la parte recurrida se enriqueció injustamente, los trabajos realizados previo al depósito del asfalto y, si las partes habían actuado de buena o mala fe al realizar mejoras útiles y/o edificaciones. Por tanto, razonó que procedía convertir el pleito de epígrafe a uno ordinario, ordenar la presentación de manejo del caso y comenzar el descubrimiento de prueba.

Luego de examinar los argumentos presentados por las partes, el 17 de septiembre de 2024, el foro primario notificó una *Resolución* en la cual declaró *No Ha Lugar* la *Moción de Dúplica a Moción en "Cumplimiento de Orden y en Réplica a Moción en Oposición de la parte demandante"*.[10] En consecuencia, denegó convertir el procedimiento de desahucio a uno ordinario.

Inconforme, el 21 de octubre de 2024, la parte peticionaria presentó el *certiorari* de epígrafe,

---

[9] *Cumplimiento de Orden y en Réplica a Moción en Oposición de la Parte Demandante*, Anejo II, págs. 2-4 del apéndice del recurso.
[10] *Resolución*, Anejo I, pág. 1 del apéndice del recurso.

mediante el cual sostuvo el siguiente señalamiento de error:

> Erró el honorable Tribunal de Primera Instancia, Sala Superior de Cabo Rojo al declarar no ha lugar su solicitud de convertir en pleito ordinario la acción de desahucio por la vía sumaria y omitir aplicar lo dispuesto en el Artículo 382 del Código Civil de 1930. En protección del poseedor de buena fe, según nuestro derecho vigente establece.

El 7 de noviembre de 2024, la parte recurrida presentó su *Moción en Oposición a la Expedición de Auto de Certiorari*. Por lo tanto, con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso de epígrafe.

**II.**

**-A-**

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias en que el Tribunal de Apelaciones expedirá un recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. Es decir, cuando "se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo." Regla 52.1 de Procedimiento Civil, *supra*.

Asimismo, dispone los supuestos en que este foro intermedio podrá revisarlas, con carácter discrecional y a manera de excepción, en las siguientes instancias:

> [C]uando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40,

establece los criterios que este foro debe tomar en consideración al atender una solicitud de expedición de este recurso discrecional; a saber, si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho. Así también, debemos tomar en consideración si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por parte del foro primario.

También examinaremos si el asunto planteado exige consideración más detenida a la luz de los autos originales o de alegatos más elaborados, o si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración. Finalmente, debemos analizar si la expedición del auto solicitado evita un fracaso de la justicia. *Véase*, Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

### III.

Es preciso comenzar por destacar que la *Resolución* recurrida, a pesar de ser un dictamen interlocutorio, es susceptible de revisión por parte de este foro, en virtud de la Regla 52.1 de Procedimiento Civil, *supra*. En síntesis, la parte peticionaria argumenta que el foro primario erró al declarar *No Ha Lugar* la solicitud de convertir el pleito de desahucio sumario a uno ordinario y omitir aplicar lo dispuesto en el Art. 382 del Código Civil de 1930, 31 LPRA sec. 1681. Ello, en protección del poseedor de buena fe.

Sin embargo, luego de evaluar el recurso de epígrafe y revisar los documentos sometidos, a la luz de los criterios de nuestra Regla 40, *supra*, rechazamos ejercer nuestra jurisdicción revisora e intervenir con el criterio del foro primario para variar el dictamen

recurrido. Recalcamos que, nuestro Tribunal Supremo ha sido enfático en que, como foros revisores, no debemos intervenir con las actuaciones de los foros primarios, en ausencia de que hayan actuado con prejuicio o parcialidad, o que hayan errado en la aplicación del derecho. Incluso, ha dispuesto que, en el caso de las actuaciones discrecionales, solo estaríamos en posición de intervenir para variar el dictamen, si el foro primario abusó de su discreción.

Así las cosas, a base de un análisis cuidadoso de la totalidad del expediente apelativo, no estamos en posición de concluir que la actuación recurrida fuese irrazonable, o contraria en derecho. Consecuentemente, tampoco podemos afirmar que dicha actuación fuese el resultado de abuso de discreción por parte del foro primario. Por tanto, procede denegar la expedición del auto discrecional solicitado.

**IV.**

Por los fundamentos antes expuestos, **DENEGAMOS** el presente auto discrecional solicitado.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones